IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02050-CMA-KLM

JOSE MEDINA ESCOBAR,

      Plaintiff,

v.

MAJOR C. HOLDITCH,
SERGEANT ROBERTS,
SERGEANT HALSTEAD,
SERGEANT P. BINDER,
C/O CRIDER,
C/O FERGUSON,
C/O MARTIN,
C/O COOPER,
C/O K. VIALPONDO,
C/O ARCHULETA,
C/O A. LOMBARD,
SERGEANT POOL, and
LIEUTENANT T. CHAVEZ,
DOCTOR J. WRIGHT, and
NURSE PRACTITIONER K. BOYD,

      Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion and Brief for Summary Judgment Pursuant to Fed.R.Civ.P. 56(c)** [Docket No. 65; Filed August 31, 2011] (the "Motion"). The Court provided Plaintiff, who is proceeding *pro se*, with multiple extensions of time to file a Response to the Motion. His final deadline to do so was December 30, 2011. *See Minute Order* [#79] at 2. However, Plaintiff failed to file a Response. Pursuant

to 28 U.S.C. § 636 (b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motion has been referred to this Court for a recommendation regarding disposition.  The Court has reviewed the pleadings, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#65] be **GRANTED**.

## I.  Summary of the Case

### A.    Claims

Plaintiff is a state prisoner at the Centennial Correctional Facility in Cañon City, Colorado.  Plaintiff initiated this lawsuit *pro se* on August 20, 2010, pursuant to U.S.C. § 1983. *See Compl.* [#3].  The governing pleading is the Amended Complaint [#17], which was entered on October 7, 2010.  Due to the extensive nature of the multiple allegations against the named Defendants, the Court lists the claims and accompanying subparts below and identifies to which Defendant each subpart applies.   Plaintiff requests compensatory and punitive damages, declaratory judgment, and certain forms of injunctive relief. *See Am. Compl.* [#17] at 21.

Plaintiff lists four claims against some or all of the Defendants: Major C. Holditch ("Holditch"), Sergeant Roberts ("Roberts"), Sergeant Halstead ("Halstead"), Sergeant P. Binder ("Binder"), Correctional Officer Crider ("Crider"), Correctional Officer Ferguson ("Ferguson"), Correctional Officer Martin ("Martin"), Correctional Officer Cooper ("Cooper"), Correctional Officer K. Vialpondo ("Vialpondo"), Correctional Officer Archuleta ("Archuleta"), Correctional Officer A. Lombard ("Lombard"), Sergeant Pool ("Pool"), Lieutenant T. Chavez ("Chavez"), Dr. J. Wright ("Wright"), and Nurse Practitioner K. Boyd ("Boyd").  At all times

relevant to Plaintiff's claims, Defendants were employees of CDOC. *See Motion* [#65] at 1. The four claims are:

1. Claim One (*Am. Compl.* [#17] at 13): First Amendment violation of Plaintiff's right to access the courts. Claim One identifies:

      a.    Holditch, for failure to use his authority to prevent other CDOC officials from depriving Plaintiff of food and sleep, from inflicting pain on Plaintiff, and from destroying Plaintiff's personal and legal property; and for threatening to have Plaintiff's legal actions dismissed; and

      b.    Pool, Halstead, Cooper, Martin, Ferguson, Crider, Vialpondo, Archuleta, Roberts, Lombard, Binder, and Chavez, for depriving Plaintiff of food and sleep; for inflicting pain and suffering on Plaintiff; for destroying and confiscating Plaintiff's personal and legal property; and for filing false COPD reports.

2. Claim Two (*Am. Compl.* [#17] at 15, 24): Eighth Amendment violations, including use of excessive force, cruel and unusual punishment, deliberate indifference to serious medical needs, and retaliation (which the Court evaluates pursuant to the First Amendment). Claim Two identifies:

      a.    Holditch, for knowingly confining Plaintiff in a hostile environment with the intent of allowing other prison officials to inflict bodily harm on him;

      b.    Chavez, Binder, Pool, Halstead, and Roberts, for failing to use their supervisory authority to protect Plaintiff from harm; and for retaliating against Plaintiff due to his administrative grievances and lawsuits against prison officials;

c.      Crider, Ferguson, Martin, Cooper, Vialpondo, Archuleta, and Lombard, for inflicting pain on Plaintiff's hands and testicles; for depriving Plaintiff of sleep and food; for keeping Plaintiff standing in a shower for up to one-and-a-half hours; for retaliating against Plaintiff for filing grievances and lawsuits against prison officials; for damaging or destroying Plaintiff's personal and legal property; and for filing numerous false COPD reports;

d.      Boyd, for refusing to give Plaintiff a bottom-tier restriction in spite of knowledge of Plaintiff's serious pain in traversing the staircase; for cancelling and rescheduling Plaintiff's appointments to cause him pain in having to retraverse the distance from his cell to the medical facility; and for refusing to prescribe pain medication in spite of knowing that Plaintiff could not afford over-the-counter medication from the canteen; and

e.      Wright, for covering up or falsifying his medical assistant's examination and diagnosis of Plaintiff's ptosis; for refusing to obtain a specialist to examine Plaintiff's eye; and for denying medical responsibility by attempting to shift responsibility to the optometrist.

3.  Claim Three (*Am. Compl.* [#17] at 16, 27): Intentional Infliction of Mental Distress and Outrageous Conduct.  Claim Three identifies:

a.      Holditch, for building up Plaintiff's hope when transferring Plaintiff from A-Unit to D-Unit; for telling Plaintiff that "DOC will provide us with legal counsel, no matter what we do to you!"; and for placing Plaintiff in a

dangerous situation with hostile officials who he knew would inflict physical and mental pain on Plaintiff;

b.   Binder, for using his authority to encourage A-Unit staff to daily punish Plaintiff over the course of a five-to-six month period;

c.   Pool, Halstead, Cooper, Crider, Ferguson, and Martin, for inflicting pain and suffering on Plaintiff while he was in D-Unit;

d.   Binder, Chavez, Vialpondo, Archuleta, Roberts, and Lombard, for inflicting "excruciating" pain on Plaintiff while he was in A-Unit;

e.   Binder, Chavez, Roberts, Halstead, Crider, Ferguson, Martin, Cooper, Vialpondo, Archuleta, Pool, and Lombard, for breaking Plaintiff's fingers; for beating him unconscious; for cracking his head open; for repeatedly jumping on his back; for picking him up from the floor and throwing him in a chair; and for transferring Plaintiff into the general prison population, 50-70 of which inmates beat Plaintiff and attempted to kill him numerous times; and

f.   Wright and Boyd, for exhibiting deliberate and willful indifference to Plaintiff's serious medical needs, i.e., "his ptosis which has caused severe vision impairment to his right eye and is rapidly deteriorating and severely affects his mental status, his ability to sleep, [and] creates a great deal of anxiety, fear and worry [that] he's going blind."

4.   Claim Four (*Am. Compl.* [#17] at 17, 26): Fourteenth Amendment violations, including substantive and procedural due process and equal protection.   Claim Four identifies:

a.   Holditch, Roberts, Halstead, Binder, Crider, Ferguson, Martin, Cooper, Vialpondo, Archuleta, Lombard, Pool, and Chavez, for causing Plaintiff injury and pain; for repeatedly conducting destructive cell shakedowns that damaged and destroyed Plaintiff's personal and legal property; for issuing "false/bogus" COPD reports for "verbal abuse and threats on a correctional officer or staff;" for depriving Plaintiff of food and sleep, causing him to lose thirty pounds; and for confining Plaintiff to administrative segregation for more than 15 years;

b.   Wright and Boyd, for refusing to order a bottom-tier restriction and for ordering Plaintiff to use the unit staircase for therapeutic reasons while knowing that Plaintiff suffered from chronic pain in his hips, legs, ankles, and feet; for refusing to prescribe pain medication, while knowing that Plaintiff could not afford medications such as aspirin or Tylenol from the prison canteen; and for cancelling and rescheduling medical appointments knowing the severe pain it took him to walk from his cell to the medical department in leg irons; and

c.   Wright, for assigning his assistant to examine Plaintiff's ptosis; for refusing to accept his assistant's diagnosis; and for covering up and falsifying the results of his assistant's examination.

**B.   Evidence**

The only evidence submitted to the Court in support of the Motion are excerpts from Plaintiff's deposition, as provided by Defendants. *See Pl.'s Depo.* [#65-1] (consisting of pages 13-16, 21-40, and 45-60 of the transcript of Plaintiff's deposition testimony).

-6-

Defendants assert that Plaintiff's deposition testimony is sufficient to establish that they are entitled to summary judgment in their favor.

In addition, Plaintiff attested to the veracity of the Amended Complaint pursuant to 28 U.S.C. § 1746, as demonstrated by the "Declaration under Penalty of Perjury" at the conclusion of each part of his Complaint. *See Am. Compl.* [#17] at 6, 21. The Court will therefore treat the Amended Complaint as an affidavit and accept the allegations stated therein as true in the absence of a statement of material facts proffered by Defendants. *See Green v. Branson*, 108 F.3d 1296, 1301 n.1 (10th Cir. 1997).

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the

nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.  If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor.  *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).   The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... grant summary judgment if the motion and supporting materials ... show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).  Further, under such circumstances, the Court may "issue any other appropriate order."  Fed. R. Civ. P. 56(e)(4).

When considering Plaintiff's Amended Complaint [#17], the Court is mindful that it must construe the filings of a *pro se* litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court

should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III.   Analysis

### A.   Claim Three: Colorado Governmental Immunity Act

Plaintiff alleges state tort claims of intentional infliction of emotional distress and outrageous conduct. *See Am. Compl.* [#17] at 16, 27. Under the Colorado Governmental Immunity Act (the "Act"), a plaintiff seeking to bring state law claims against state defendants must provide written notice within 180 days of discovering the asserted injury. *Yaklich v. Grand Cty.*, 278 F. App'x 797, 803-04 (10th Cir. 2008) (citing Colo. Rev. Stat. § 24-10-109(1)). "Compliance with the 180-day notice requirement is a jurisdictional prerequisite and failure to comply with it is an absolute bar to suit." *Id.* (citations omitted).

In his deposition, Plaintiff first stated that he did not know if he filed such a notice, but then he immediately thereafter admitted that he "had no idea" that he had to file a notice with respect to the alleged Claim Three violations. *See Pl.'s Depo.* [#65-1] at 31. In consideration of this admission, the Court finds that Defendants have established that Plaintiff failed to comply with the Act's required notice provision, and no genuine issue of material fact exists as to Plaintiff's Claim Three. Thus, judgment should be entered in Defendants' favor as to Claim Three. *See Jones v. Cowens*, No. 09-cv-01274-MSK-MJW, 2010 WL 3239286, at *3 (D. Colo. Aug. 12, 2010) (granting defendant's motion for

summary judgment as to plaintiff's tort claim due to plaintiff's failure to comply with the Act's notice requirement).

**B.     Qualified Immunity Defense to Claims One, Two, and Four**

Defendants argue that they are entitled to qualified immunity as to Plaintiff's Claims One, Two, and Four, which collectively allege constitutional violations of the First, Eighth, and Fourteenth Amendments.  Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity also offers protection from trial and other burdens of litigation.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"[B]ecause qualified immunity is 'designed to protect public officials from spending inordinate time and money defending erroneous suits at trial," the Court reviews summary judgment motions involving a qualified immunity defense "somewhat differently" from other motions for summary judgment.  *Clark v. Edmunds*, 513 F.3d 1219, 1221 (10th Cir. 2008) (internal citations omitted).  When a defendant asserts a qualified immunity defense in a summary judgment motion, "[t]he threshold inquiry is whether the . . . evidenced facts . . . taken in the light most favorable to the plaintiff show a constitutional violation."  *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Next, the Court must consider whether Plaintiff has shown that "the constitutional right was clearly established at the time of the alleged unlawful activity."  *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

In order for Plaintiff's claim "to survive summary judgment, the record must contain

facts that rebut the presumption of [Defendants'] immunity from suit." *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001) (discussing special nature of qualified immunity defense); *see Rounds v. Corbin*, No. 04-cv-02532-CMA-KMT, 2009 WL 2982006, at *2-3 (D. Colo. Sept. 11, 2009) (denying summary judgment motion on qualified immunity where plaintiff "submitted more than unsupported allegations" to support his claim); *Kelley v. City of Albuquerque*, 375 F. Supp. 2d 1183,1203 n.7 (D.N.M. 2004) (citing *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)) (noting that to overcome defendant's motion for summary judgment on basis of qualified immunity, "plaintiff must do more than rest on its own speculation or pleadings"); *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 593 (10th Cir. 1999) (denying summary judgment on qualified immunity where the "[t]he record supports the allegation that the plaintiffs' Fourth Amendment rights were violated"); *Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991) (noting that when "a government official raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must produce facts sufficient to show both that the defendant's alleged conduct violated the law and that [the] law was clearly established when the alleged violation occurred").

Plaintiff bears the burden of proving that Defendants' actions violated clearly established law. *Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994). *See Saucier*, 533 U.S. at 201 ("[W]hether the right was clearly established . . . must be undertaken in light of the specific context of the case, not as a broad general proposition."). "[T]he right the official is alleged to have violated must have been 'clearly established' in a particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right." *Id.* at 202

(citation omitted).  "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [official] conduct. . . .  If the officer's mistake as to what the law requires is reasonable, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205.  After all, "qualified immunity precludes the imposition of liability for 'all but the *plainly incompetent* or those who knowingly violate the law.'" *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) (citation omitted).

It is no longer mandatory that the Court first consider whether Plaintiff has demonstrated a constitutional violation by Defendants; using its discretion, the Court may move immediately to an analysis of whether the right at issue was clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 236.  In this matter, it is appropriate to first address whether the "evidenced facts" in the Amended Complaint, taken in the light most favorable to Plaintiff, show constitutional violations.

For the reasons stated below, even accepting the allegations in the Amended Complaint as true, the Court finds that Plaintiff fails to rebut the presumption of qualified immunity enjoyed by Defendants as to all subparts of Plaintiff's Claims One, Two, and Four. The Court's conclusions are further explained as follows.

### 1.    Claim Four

In Claim Four, Plaintiff contends that Defendants violated his Fourteenth Amendment rights to substantive and procedural due process and equal protection under the law.  Defendants argue that Plaintiff does nothing more than present a series of conclusory statements which are insufficient to support an equal protection or due process claim.  The Court agrees.

a.      **Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment prohibits the government from treating similarly-situated individuals differently. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Buckley v. Valeo*, 424 U.S. 1, 93 (1976) (recognizing that the "[e]qual protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment"). In order for a plaintiff to state an equal protection claim, he must allege that the defendants either denied him a fundamental right or provided differential treatment based on a suspect classification. *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir.1995). If the plaintiff is not a member of a protected class and does not assert a fundamental right, the Court must only determine whether the alleged discriminatory action has a rational basis. *See id.*; *see also Gwinn v. Awmiller*, 354 F.3d 1211, 1228 (10th Cir. 2004) (holding that "absent an allegation of a suspect classification, our review of prison officials' differing treatment of various inmates is quite deferential" and considers only whether the treatment was "reasonably related to a legitimate penological purpose").

Plaintiff's claim is subject to dismissal where he fails to identify any inmate similarly situated to him. *See id.*; *see also Keck v. Zenon*, 240 F. App'x 815, 819-20 (10th Cir. 2007) (dismissal of equal protection claim proper when inmate fails to offer facts that similarly-situated inmates subject to administrative segregation); *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (given that decision to segregate inmate was discretionary and based upon a number of factors, dismissal proper when inmate unable to identify similarly-situated inmate). Here, Plaintiff has failed to name with any specificity other allegedly similarly-situated inmates who were treated differently from him. Plaintiff thus does not state a

colorable claim for relief based on equal protection.  The Court finds that no genuine issue of material fact exists as to the portions of Plaintiff's Claim Four that assert a violation of the Equal Protection Clause of the Fourteenth Amendment, and judgment should be entered in Defendants' favor on this subpart of Plaintiff's Claim Four.

### b.    Due Process

Plaintiff appears to assert a substantive due process claim against all Defendants.  *See Am. Compl.* [#17] at 17, 26.  In addition, he may be asserting a procedural due process claim against Defendants Wright and Boyd.   *See id.* at 26.  The Court addresses each claim separately.

### i.    Procedural Due Process

Procedural due process protects the individual against "arbitrary action of government."  *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).  In general, a plaintiff must make two showings in order to proceed on a procedural due process claim.  *See Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001). First, a plaintiff must demonstrate that he possesses a protected liberty or property interest.  *Id.*  Second, a plaintiff must show that the procedures utilized which impacted his protected interest were inadequate under the circumstances.  *Id.* at 1149.  Here, Plaintiff fails to make either showing.  Plaintiff does not identify which facts alleged in Claim Four raise a procedural due process issue, nor does Plaintiff attempt to address any form of procedure utilized by Defendants that was somehow deficient.   Thus, Plaintiff fails to state a colorable claim pursuant to his constitutional right to procedural due process.  The Court finds that no genuine issue of material fact exists as to the portions of Plaintiff's Claim Four that assert a violation of procedural due process pursuant to the Fourteenth Amendment, and judgment should be

entered in Defendants' favor on this subpart of Plaintiff's Claim Four.

### ii.    Substantive Due Process

As indicated above, Plaintiff alleges that both his procedural and substantive due process rights were violated.  Despite the varying labels Plaintiff has attached to his myriad claims, and his attempts to package each claim under multiple constitutional dimensions, the Court is not rigidly guided by Plaintiff's labels.  *See Castro v. United States*, 540 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a pro se party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").  Substantive due process claims are disfavored if the claim can be analyzed under "an explicit textual source of constitutional protection."  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Most of the allegations of Plaintiff's Claim Four are more properly analyzed pursuant to the specific constitutional rights under which they arise.  For example, certain of Plaintiff's allegations implicate the protections against retaliation as provided by the First Amendment (and in any event, most of Plaintiff's Claim Four simply repeats the allegations stated in his other Claims).  The Court construes Claim Four accordingly and addresses Plaintiff's substantive due process allegations below.

### 2.    Claim One and Claim Two

The Court first addresses Defendants' arguments that Plaintiff cannot establish the requisite personal participation by certain Defendants, and that Plaintiff cannot prove that he sustained the requisite physical injury for certain subparts of his Claim Two.  Then, the Court categorizes the remaining subparts of Plaintiff's Claim Two into violations of the Eighth Amendment asserting inadequate housing (failure to protect from hostile inmates

and imposition of long-term administrative segregation), deprivation of food, and deliberate indifference to medical needs; and violations of the First Amendment protection against retaliation (threats, access to the courts [Claim One], and filing of false reports) for the filing of administrative grievances.  The Court finds that Defendants are entitled to qualified immunity and judgment should be entered in their favor on Claim One and Claim Two.

### a.    Personal Participation

"Individual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir.1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir.1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)).   A defendant was personally involved in an alleged constitutional violation only if there is an "affirmative link" between his or her conduct and the described violation.  *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).  Because of the "affirmative link" requirement, a defendant in a position of general supervisory authority cannot be held vicariously liable for constitutional violations committed by his or her subordinates.  *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("[S]upervisor status by itself is insufficient to support liability." (citing *Rizzo v. Goode*, 423 U.S. 362, 376 (1976))); *Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir. 1991) ("'[T]here is no concept of strict supervisor liability under section 1983.'" (citation omitted)).

Courts have explained that a defendant in a supervisory position may be personally

involved in an alleged constitutional violation committed by his or her subordinates in two situations.  First, supervisor liability may arise when the supervisor was personally involved in directing the subordinates to take the action that resulted in the alleged constitutional violation.  *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992).  Second, supervisor liability may arise when the supervisor had actual knowledge that the subordinates were committing the alleged constitutional violation and acquiesced in its commission.  *Id.* (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (stating that supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence")).  However, the simple fact that a supervisor knew of and acquiesced in a constitutional violation committed by the subordinates may no longer establish that he or she was personally involved in the violation.  *See Arocho v. Nafziger*, 367 F. App'x 942, 947 n.4 (10th Cir. 2010) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

Plaintiff identifies Defendants Holditch, Chavez, Binder, Pool, Halstead, and Roberts as supervisors.  *See Am. Compl.* [#17] at 15.   Review of the Amended Complaint demonstrates to the Court that the allegations against Holditch, Chavez, and Roberts are minimal and conclusory, and arise merely from their positions as supervisors.[1]  Plaintiff fails to allege with particularity that these Defendants instructed subordinates to violate Plaintiff's constitutional rights, nor does Plaintiff describe how these Defendants may have had actual

---

[1]  The Court discusses the allegations against Defendants Binder, Pool, and Halstead in more detail below.

knowledge that constitutional violations were taking place.[2]   Therefore, the Court finds that no genuine issue of material fact exists as to the supervisory Defendants.   The Court recommends that judgment be entered in favor of Defendants Holditch, Chavez, and Roberts as to all claims against them due to lack of the requisite personal participation pursuant to Section 1983.

### b.   Absence of Physical Injury

"A claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional."   *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007).   Plaintiff asserts throughout his Amended Complaint that he was subjected to excessive force by Defendants; however, Plaintiff admitted in his deposition that he has no evidence of physical injury resulting from the allegations in the Amended Complaint.   *See Pl.'s Depo* [#65-1] at 47-50.   In light of Plaintiff's admission, no genuine issue of material fact exists as to whether Plaintiff endured an actual, physical injury related to the allegations in the Amended Complaint.   Therefore, the Court recommends that judgment be entered in favor of all Defendants on all parts of Plaintiff's Claim Two that assert the use of excessive force.

Additionally, 42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Section 1997e(e) bars compensatory damages for mental and emotional injuries suffered by a prisoner (regardless of the nature of the right asserted) in the absence of physical

---

[2]  Plaintiff affirmatively stated during his deposition that he did not have any documents or evidence that Defendants Chavez, Binder, or Roberts did anything to him during the time frame relevant to the Amended Complaint.  *See Pl.'s Depo* [#65-1] at 45-47.  He also stated that for "all of the officials herein, I don't have any evidence."  *Id.* at 47.

injury. *Harris v. Matthews*, 417 F. App'x 758, 763 n.9 (10th Cir. 2011) (unreported). However, this provision does not preclude recovery of nominal or punitive damages for violations of a prisoners' constitutional rights, or requests for declaratory or injunctive relief. *Id.* (citations omitted). In light of Plaintiff's admission regarding his lack of physical injury, the Court finds that no genuine issue of material fact exists as to Plaintiff's request for compensatory damages. Thus, the Court recommends that judgment be entered in favor of Defendants as to Plaintiff's request for compensatory damages. *See Am. Compl.* [#17] at 21.

### c.    Eighth Amendment Violations

The Eighth Amendment requires that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and [that they] 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Court's analysis of Plaintiff's allegations which implicate the Eighth Amendment involves both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). As to the objective component, the Court considers whether Plaintiff was deprived of a sufficiently serious basic human need, *i.e.*, an extreme deprivation. "Because discomfort is 'part of the penalty that criminal offenders pay for their offenses against society, . . . only those deprivations denying 'the minimal civilized measures of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations omitted).

As to the subjective component, the Court considers whether the Defendants at issue intended the harm, *i.e.*, acted with deliberate indifference to the harm that could result. Deliberate indifference can only be proved by showing that Defendants "kn[ew] of

and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. The subjective component requires a showing of "obduracy and wantonness." *Whitely v. Albers*, 475 U.S. 312, 319 (1986).

This standard recognizes a balance between "the exigencies of running a prison" and the "'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" *DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). Moreover, "[t]he Eighth Amendment 'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive and even harsh.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (citation omitted). Thus, while prison officials must take reasonable measures in securing a safe and humane environment for prisoners, the Court should take into account the circumstances of the challenged conduct. *Id.* at 974; *see also Hudson*, 503 U.S. at 5-6 (holding that a court should give wide-ranging deference to prison staff).

> ### i.   Housing: Failure to Protect and Administrative Segregation

Plaintiff asserts that Defendants Holditch, Chavez, Binder, Pool, Halstead, Roberts, Crider, Ferguson, Martin, Cooper, Vialpondo, Archuleta, and Lombard have failed to protect him from other correctional facility employees who were named as defendants in this and previous lawsuits filed by Plaintiff and from other inmates allegedly hostile to Plaintiff. In relation to a failure to protect claim, Plaintiff must provide sufficient factual allegations indicating that his conditions of incarceration posed a substantial risk of serious harm. *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). Furthermore, Plaintiff must provide sufficient factual allegations indicating that Defendants were "both aware of facts

from which the inference could be drawn that a substantial risk of harm exist[ed], and [they drew] the inference." *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 809 (10th Cir. 1999). Here, Plaintiff fails to meet either requirement. Plaintiff provides no details about the contended serious harm: he does not identify the hostile inmates against whom he was allegedly not protected, nor does he give dates and circumstances relevant to the allegations. These allegations are thus unsubstantiated and judgment should be entered in favor of the above-named Defendants as to this subpart of Plaintiff's Claim Two.

Regarding Plaintiff's claim premised on his detention in administrative segregation, the Court refers to its previous adjudication of the same claim in *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1301 (D. Colo. 2009). As explained before, mere placement in administrative segregation does not, on its own, implicate a liberty interest. *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996); *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). That is, a prisoner has no inherent constitutional right not to be placed in disciplinary confinement. *See Sandin v. Connor*, 515 U.S. 472, 487 (1995). The segregation of a prisoner as a form of punishment or as administrative management of a correctional facility is not an unexpected incident of a criminal sentence and does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" protected by the Due Process Clause. *Id.* at 485; *see also Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). Neither does placement in administrative segregation alone give rise to a substantial risk of serious harm in terms of an alleged Eighth Amendment violation. *See Driggers v. Clark*, 422 F. App'x 747, 750 (10th Cir. 2011) (unpublished) ("[A]dministrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." (citation omitted)).

-21-

Therefore, in the absence of any factual allegations other than the simple fact that Plaintiff allegedly has been held in administrative segregation, judgment should be entered in favor of Defendants as to this subpart of Plaintiff's Claim Two.

### ii.    Deprivation of Food

Plaintiff contends that Defendants Holditch, Roberts, Halstead, Binder, Crider, Ferguson, Martin, Cooper, Vialpondo, Archuleta, Lombard, Pool, and Chavez deprived him of food. *See Am. Compl.* [#17] at 8-12,15 ; *Pl.'s Depo* [#65-1] at 34-35. Courts have found that a substantial deprivation of food may be sufficiently serious to state a conditions-of-confinement claim pursuant to the Eighth Amendment. *See Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002); *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983). To state a claim for food deprivation, a prisoner must allege both: (1) a "sufficiently serious" deprivation of "the minimal civilized measure of life's necessities" and (2) "deliberate indifference" by prison officials to a "substantial risk of serious harm to an inmate." *Strope v. Sebelius*, 189 F. App'x 763, 766 (10th Cir. 2006) (unpublished decision) (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (quotations omitted)). "While no single factor controls the outcome of these cases, the length of exposure to the conditions is often of prime importance." *DeSpain*, 264 F.3d at 974. In this regard, "the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." *Id.* (citations omitted).

Here, Plaintiff's contentions lack specificity. *See, e.g.*, *Am. Compl.* [#17] at 9 ("[Defendants Pool and Halstead] began depriving [Plaintiff] of . . . food . . . ."), at 10 ("On

November 12, 2009, Plaintiff began grievance procedures for Defendant Crider's . . . refusing to feed him . . . ."), at 10 ("Defendant [Binder] has continued to deprive Plaintiff of . . . food . . . ."), at 10 ("Defendant Roberts on or about Jan. 2009 started depriving Plaintiff of food . . . ."), at 11 ("[Defendant Roberts] encourages [Defendants from other units] to . . . deprive [Plaintiff] of food . . . ."), at 11 ("[Defendant Binder] told Defendant Pool . . . 'Don't you let [Plaintiff] come to "D" [Unit and] eat breakfast and lunch . . . ."), at 11 ("Defendant Chavez . . . has subjected Plaintiff to and/or caused him to be subjected to a hostile living environment by encouraging, persuading, and supporting . . . deprivation of food . . . ."), at 12 ("Sleep and food deprivation has caused Plaintiff to suffer severe depression, anxiety, paranoia, sugar-diabetic reactions, adverse/erratic behavior, memory loss, and pain [and] suffering."). The most specific contention he makes, without attributing it to any particular Defendant or Defendants, is that, "Plaintiff is constantly, on a daily basis deprived of one to two meals a day, passed by and refused and/or threatened with injury if/when he reaches for his food." *Id.* at 8. He also states that he has lost "up to 25 to 30 lbs." *Id.* at 9.

Accepting these allegations as true, the Court finds that the two prongs of an Eighth Amendment claim are not met. First, the deprivation of one-to-two meals every day, resulting in weight loss of thirty pounds, may, if true, constitute an objectively serious deprivation within the meaning of the Eighth Amendment. However, the Court is troubled by the lack of any allegation specifying the period over which this deprivation allegedly occurred. Second, even if the Court were to find that Plaintiff meets the first element, he has alleged no facts showing that Defendants acted with the subjective wilfulness required to state a violation of the Eighth Amendment. Plaintiff's generalized accusations against

the above-named Defendants do not, without more, constitute evidence of "deliberate indifference" by prison officials to a "substantial risk of serious harm to an inmate." *Strope*, 189 F. App'x at 766. Therefore, judgment should be entered in favor of Defendants as to this subpart of Plaintiff's Claim Two.[3]

### iii.    Deliberate Indifference to Medical Needs

A prison official's deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *Estelle*, 429 U.S. at 104. To establish a claim for deliberate indifference, a plaintiff must first prove that objectively, his medical need is "sufficiently serious." *Farmer*, 511 U.S. at 834. A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted). Second, the plaintiff must prove that, subjectively,  the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,

---

[3] The Court notes that Plaintiff filed another lawsuit in this District also alleging deprivation of food. *See Escobar v. Jones*, 09-cv-02207-CMA-KLM (D. Colo.) (the "2009 Case"). In ruling on a motion for summary judgment on this and other issues, the Court in the 2009 Case found that a genuine issue of material fact existed regarding Plaintiff's Eighth Amendment claim based on food deprivation. *See id.* [#147] at 25-27. Two of the defendants in the 2009 Case, Binder and Chavez, are also named as Defendants in the Eighth Amendment claim in this case. However, Plaintiff has utterly failed to respond to Defendants' Motion for Summary Judgment here, thus leaving the Court to adjudicate his claims on the sole basis of his Amended Complaint and the portions of his deposition testimony which have been provided by Defendants. Plaintiff's allegations in this case are far less detailed, in that he has failed to identify a particular time frame during which he was allegedly deprived of food and/or any specific actions allegedly taken against him to deprive him of food. In these circumstances, the Court is unwilling to allow Plaintiff's Claim to proceed. Fed. R. Civ. P. 56(e)(4).

and he must also draw the inference." *Id.*

Plaintiff contends that Defendant Wright discontinued Plaintiff's thyroid medication and that Defendants Wright and Boyd did not assign Plaintiff to a lower-tier restriction, in violation of Plaintiff's right to medical care because of his osteoporosis, diabetes, and leg swelling. *See Pl.'s Depo.* [#65-1] at 13-14, 16, 21-22. He states that he was placed "in danger of injury" by having to use the stairs. *Am. Compl.* [#17] at 24. He further asserts that Boyd instructed him to use the staircase as exercise for therapeutic reasons. *Id.* He avers that Boyd cancelled and rescheduled medical appointments. *Id.* at 22. Finally, he states that Wright chose not to refer Plaintiff to a specialist to examine his ptosis. *Id.* at 24.

"A mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). A prisoner does not have a valid claim of deliberate indifference simply because he was denied "a particular course of treatment" that he desired. *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006). "[A] prison doctor remains free to exercise his or her independent professional judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997). Although Defendants Wright and Boyd's treatment of Plaintiff may not be that which Plaintiff believes is due, and perhaps may be negligent, it is medical treatment nonetheless and does not constitute deliberate indifference pursuant to the Eighth Amendment. Thus, the Court recommends that judgment be entered in favor of Defendants Wright and Boyd as to this subpart of Plaintiff's Claim Two.

### d. First Amendment Retaliation and Access to Courts

In Claim Two, Plaintiff asserts that Defendants Wright and Boyd retaliated on Plaintiff

by not assigning him a lower-tier restriction because of the grievances and prior lawsuits Plaintiff has filed against Defendant Wright.  *See Pl.'s Depo.* [#65-1] at 24-25.

In Claim One and Claim Two, Plaintiff further asserts that the other Defendants "and/or their agents retaliated [against] the Plaintiff by punishing him, by inflicting pain and suffering on him maliciously and sadistically for no penological purpose other than to cause the Plaintiff physical and mental harm pain and suffering in retaliation for grievances and legal action on corrections personnel [and that] Defendants through repeated shakedowns of Plaintiff's cell, read, destroyed and/or confiscated his personal, legal court papers and things."  *Am. Compl.* [#17] at 7-8; *see also, e.g.*, *id.* at 9 (stating that Defendants Pool and Halstead threatened Plaintiff with assault and injury, that they kept him in the shower for 60-80 minutes at a time, deprived him of food and sleep, brought Defendant Binder and other personnel from other units "to harass and inflict further pain on his hands/wrists/fingers and testicles," conducted cell shakedowns to destroy his personal and legal property, and encouraged their unit staff to file false COPD reports on Plaintiff), at 9 (stating that Defendants Halstead, Cooper, Martin, and Ferguson deprived Plaintiff of sleep, filed COPD reports to strip Plaintiff of privileges, kept him in the shower for 60-90 minutes at a time, and taunted him to file grievances), at 9-10 (stating that, on February 4, 2010, Defendants Pool and Cooper escorted Plaintiff to the shower, that Defendant Pool blocked the camera and told Defendant Cooper to "do it now," that Defendant Cooper "snapped the hand cuffs on Plaintiff so tight it caused him excruciating pain causing him to yell, that Defendant Pool closed the shower door tray slot so no one else could hear Plaintiff yelling, and that Defendant Pool and Cooper "laughed at his agony"), at 10 (stating that Defendant Vialpondo "threatened Plaintiff with assaults [and] injuries to cause him grave bodily injury

or death if he didn't dismiss his civil action on Defendant Binder," and that he "started depriving Plaintiff of sleep by banging on his door and slamming his tray slot to wake him up"), at 10 (stating that Defendant Crider harassed and badgered Plaintiff, inflicted pain on his hands, fingers, and testicles, "used one cuff to yank, pull, [and] twist to cause pain to Plaintiff's still-cuffed hand," refused to feed him, and deprived Plaintiff of sleep "by kicking and banging on his door [and] slamming his tray slot with excessive force several times a day"), at 10 (stating that Defendant Archuleta enticed another inmate to "fece[s] bomb Plaintiff's cell [and] spray it in with the shower cleaning hose;" and that he later grabbed Plaintiff's bicep, "dug his fingernails into his bicep and twisted and told him, if you resist or pull away I'll take you down and bust your teeth out"), at 10-11 (stating that Defendant Roberts "summons Defendants from other units who are hostile to Plaintiff and assigns them to escort him to/from showers and encourages them to inflict pain on him [and] deprive him of food and sleep"), at 11 (stating that Defendant Lombard covered a camera while Defendant Binder used handcuffs to inflict pain on Plaintiff and that she failed to protect Plaintiff from Defendants Binder, Vialpondo, and Archuleta), at 11 (stating that Defendant Binder threatened Plaintiff and told other unspecified officials to assault and injure Plaintiff), at 11-12 (stating that Defendant Chavez encouraged and supported the infliction of pain on Plaintiff by other officials and that she threatened to file a criminal case on Plaintiff).  Plaintiff admitted in his deposition that, except for his own word, he had no evidence, such as witnesses or medical files, in support of any of his allegations of retaliation. *See Pl.'s Depo.* [#65-1] at 36-40, 45-47.  The Court notes that Plaintiff has also produced no evidence of physical injury.  *See supra* § III.B.2.b.

Regarding the threats of harm or adverse action in retaliation for Plaintiff's filing of

grievances, "[t]he existence of an improper motive for disciplining a prisoner which results in interference with a constitutional right" may give rise to a cause of action pursuant to Section 1983. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). Access to the courts is a fundamental right protected by the Constitution, including the First Amendment right to petition the government for redress of grievances. *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985). Because a prisoner must first file a grievance in order to ultimately gain access to courts to state a claim for relief pursuant to 42 U.S.C. § 1997e, punishing him for actually filing a grievance would state a claim for both denial of access to the courts and violation of the First Amendment. *See id.* ("It is also one aspect of the First Amendment right to petition the government for redress of grievances"); *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (holding that retaliation for filing lawsuits and administrative grievances "violates both the inmate's right of access to the courts and the inmate's First Amendment rights"). Therefore, "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Maschner*, 899 F.2d at 947. "This principle applies even where the action taken in retaliation would be otherwise permissible." *Id.* at 948.

Nevertheless, a prisoner is "not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prisons merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). That is, not "every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim." *Dawes v. Walker*, 239 F.3d 489, 492-93 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). Instead, "in order to establish a First Amendment retaliation claim, a prisoner must

-28-

demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action." *Baldauf v. Hyatt*, 2008 WL 280839, at *7 (D. Colo. Jan. 31, 2008) (unpublished decision) (quoting *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004)). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144 (internal quotation marks and citation omitted). "[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, . . . would not have taken place." *Id.*

### i.    Threats and Denial of Access to the Courts

Plaintiff's filing of grievances and lawsuits is protected conduct, and thus satisfies the first element of a First Amendment retaliation claim. *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (holding that prison officials may not retaliate against prisoners for filing lawsuits or petitioning for redress of grievances); *Nordgren*, 762 F.2d at 853. However, the second requirement (*i.e.*, that Plaintiff suffered an adverse action) is missing. In large part, Plaintiff alleges that Defendants have verbalized *threats* of harm against Plaintiff in retaliation for the grievances and lawsuits that Plaintiff has filed. In some contexts, threats of harm may constitute an adverse action, but such circumstances are not present here. The second factor requiring an adverse action contemplates action that results in the chilling of the inmate's exercise of his constitutional rights. *See Parker v. Zavaras*, No. 08-cv-00737-MSK-KLM, 2011 WL 1211487, at *14 (D. Colo. Mar. 31, 2011) ("[T]hreats are actionable in a § 1983 claim, if they are sufficient to chill a person of reasonable firmness."); *Rogers v. Garcia*, No. 08-cv-02821-WYD-MJW, 2010 WL 3547432, at *4 (D. Colo. Sept. 3, 2010) ("[r]etaliation, though it is not expressly referred to in the

Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." (citation and internal quotation omitted)).

The record in this matter amply belies Plaintiff's suggestion that he has been dissuaded from filing grievances as a result of Defendants' alleged threats and actions. Plaintiff has not alleged or provided evidence that he has been dissuaded from filing grievances or lawsuits. *See also Escobar v. Brown*, No. 06-cv-01222-CMA-KLM, 2010 WL 5230874, at *5-6 (D. Colo. Dec. 16, 2010) (finding Plaintiff was not afraid to file grievances as a result of unsubstantiated allegations of threats of retaliation, as evidenced by Plaintiff's continuing filing of grievances).   In fact, Plaintiff initiated two more lawsuits after the commencement of the case at hand: 11-cv-00169-CMA-KLM (open case); and 11-cv-01443-CMA-KLM (voluntarily dismissed without prejudice).   Thus, the Court finds that Plaintiff's assertions do not satisfy the second element required for a claim of retaliation, because the alleged threats do not constitute an adverse action in these circumstances, and in any event, Plaintiff's exercise of protected conduct was not chilled by the threats. Accordingly, the Court recommends that judgment be entered in favor of all Defendants as to Plaintiff's Claim Two allegations of retaliation based on alleged threats.

Similarly, Plaintiff claims that his constitutional right of access to the courts was violated by all Defendants other than Defendants Wright and Boyd.  To successfully raise such a claim, "a prisoner must demonstrate actual injury from interference with his access to the courts—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or conditions of confinement." *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (citing *Lewis v. Casey*, 518 U.S. 343, 351-55 (1996)).  During his deposition, Plaintiff failed to articulate any actual injury in support

of his claim; for example, he could not remember any deadline that he did not meet or any document that Defendants prevented him from filing with the Court. *See Pl.'s Depo* [#65-1] at 52, 56. When directly asked whether he could point to any injury to a legal right of his that he suffered because of Defendants' actions, Plaintiff stated that he could not. *See id.* at 56-57. Further, as the Court has found, Plaintiff's exercise of protected conduct was not chilled by the threats he allegedly received. On this record, therefore, Plaintiff's claim of a violation of his constitutional right to access the courts must fail. Accordingly, the Court recommends that judgment be entered in favor of Defendants as to Plaintiff's Claim One allegations based on restricted access to the courts.

### ii.    False COPD Reports

Regarding Plaintiff's allegations that certain Defendants have filed false COPD (Code of Penal Discipline) reports against him, the Court finds that these contentions are unsubstantiated. However, even if Plaintiff had properly alleged such conduct, "prisoners have no constitutional protections for being falsely or wrongly accused of conduct which may result in the deprivation of certain liberty interests provided that the prisoner is afforded due process." *Escobar*, 2011 WL 3665391, at *8 (citing *Cooper v. Belcher*, No. 08-cv-01599-CMA-KMT, 2010 WL 3359709, at *20 (D. Colo. Aug. 25, 2010) (unpublished)). Further, "an 'inmate must allege more than his personal belief that he is the victim of retaliation.'" *Id.* (quotation omitted). Here, just as in *Escobar v. Mora*, Plaintiff has not alleged that he was denied due process concerning the filing of the allegedly false disciplinary reports. *See id.* Therefore, the Court recommends that judgment be entered in favor of all Defendants as to Plaintiff's conclusory and speculative assertions that these Defendants filed false COPD reports against him.

-31-

### IV. Conclusion

Accordingly, the Court respectfully **RECOMMENDS** that Defendants' Motion for Summary Judgment [#65] be **GRANTED**.

The Court further **RECOMMENDS** that this action count as a strike against Plaintiff pursuant to 28 U.S.C. § 1915(g) based on the frivolous nature of the pursued claims.  More specifically, as set forth above, Plaintiff not only failed to marshal either allegations or evidence in support of his claims and admitted during his deposition that he has no evidence to support most of them (*see* pp. 9, 12, 13, 14, 18, 18 n. 2, 21, 22, 24, 28, 31 and 32, *infra*), but he also failed to respond to Defendants' Motion for Summary Judgment, despite seeking and/or obtaining extensions of time to complete discovery, to file dispositive motions and to respond to Defendants' dispositive motion. [Docket Nos. 55, 70, 74, 79 ].  In short, Plaintiff failed to present any evidence in support of his claims aside from his own self-serving statements.   Under these circumstances, assessment of a strike is appropriate.  *Thomas v. Frech*, 400 F. App'x 315, 317 (10th Cir. 2010) (assessing strike against prisoner plaintiff for pursuing a frivolous appeal of the district court's grant of summary judgment in favor of defendants); *Alley v. Dowis*, No. 09-cv-02713-WYD-BNB, 2011 WL 3682759, at *10 (D. Colo. May 2, 2011) (recommending entry of summary judgment in favor of defendants and commensurate strike against prisoner plaintiff for pursuing frivolous claims).

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is

assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.,* 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91  F.3d  1411,  1412-13  (10th  Cir.  1996).    A  party's  objections  to  this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  February 1, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge